```
                    UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NORTH CAROLINA
                           SOUTHERN DIVISION

                       CASE NO: 7:14-CV-185-BR
```

**ANNJEANETTE GILLIS, et al.,**

    **Plaintiffs,**

**v.**                                    **MEMORANDUM OPINION AND ORDER**

**MURPHY-BROWN, LLC d/b/a**
**SMITHFIELD HOG PRODUCTION**
**DIVISION,**

    **Defendant.**

Pending before the court is defendant's motion for to allow post-trial contact with jurors. (ECF No. 301). That motion is **DENIED**.

As our appeals court stated just last year,

> There are good reasons for limiting the parties' interactions with jurors after the verdict. Jury service needs to come to a timely conclusion. See Pena-Rodriguez [v. Colorado], 137 S. Ct. [855] at 865, 869 [(2017)]. It ordinarily ends, logically enough, when the jurors reach a verdict. Losing parties may have an incentive to uncover the course of deliberations with an eye to undermining the jury's conclusion. See McDonald v. Pless, 238 U.S. 264, 267-69, 35 S. Ct. 783, 59 L. Ed. 1300 (1915). The judicial system, by contrast, possesses an interest in protecting the confidentiality of juror discussions and in allowing jurors to resume their normal routines. See Tanner v. United States, 483 U.S. 107, 118-20, 107 S. Ct. 2739, 97 L. Ed. 2d 90 (1987). The willingness of jurors to serve and to speak freely during deliberations depends on this no-impeachment principle. See Rakes v. United States, 169 F.2d 739, 745-46 (4th Cir. 1948). Post-verdict interrogations have at least the potential to stretch out or to turn adversarial,

and thereby undermine the no-impeachment presumption.

United States v. Birchette, 908 F.3d 50, 55-56 (4th Cir. 2018). A district court's denial of a request to interview jurors is reviewed for an abuse of discretion. See id. ("This is a deferential standard, designed primarily to correct the arbitrary exercise of authority while upholding the range of reasonable judgment calls a trial judge is well positioned to make.").

In support of its motion, Murphy-Brown states:

> As the Court is aware, there are currently eight other cases set for trial that are related to the recently concluded trial. The juries in these upcoming cases will consider many of the same issues considered by the jury in this case. Murphy-Brown seeks to interview the jurors only to hone—and make more concise—the arguments it presented in this bellwether trial. The need for juror interviews is especially acute here because the Court did not use a special verdict form during the compensatory damages phase of the trial. As a result, without interviews, Murphy-Brown is not able to ascertain which aspect or aspects of the operations at the Sholar Farm the jury actually perceived to constitute a nuisance. This information could be invaluable in attempting to streamline future trials, and potentially even avoiding new claims in the future.
>
> Additionally, the requested interviews are not being conducted as part of any effort to challenge the judgment. Murphy-Brown will stipulate that it will not seek to introduce any testimony from any of the jurors gathered during post-trial interviews. Therefore, many of the oft-voiced concerns regarding post-trial jury interviews—including that they lead to post-trial litigation and attempts to set aside verdicts—are not implicated. Finally, if the Court allows interviews, there would be no prejudice to

2

> Plaintiffs because any order allowing contact with jurors could apply equally to all Parties.

ECF No. 301 at pp.3-4. Defendant's desire to interview the jurors in order to "hone" its arguments for further trials is not a compelling reason to allow post-verdict interviews with jurors under the facts and circumstances of this case. "The [ ] interests of both the disgruntled litigant and its counsel in interviewing jurors in order to satisfy their curiosity and improve their curiosity are limited." Haeberle v. Texas Intern. Airlines, 739 F.2d 1019, 1022 (5th Cir. 1984) (denying attorney leave to interview jurors about basis for adverse verdict where counsel "sought information to satisfy their own curiosity and improve their techniques of advocacy"); see also Sixberry v. Buster, 88 F.R.D. 561, 561-62 (E.D. Pa. 1989) ("It is well settled that the Federal courts strongly disfavor `any public or private post-trial inquisition of jurors as to how they reasoned, lest it operate to intimidate, beset and harass them' . . . In those instances in which such questioning of jurors is allowed, it is limited for the purpose of allowing counsel to investigate possible irregularities that might provide grounds for a new trial . . . . Counsel cites no cases, nor does our research disclose any cases, which permit an attorney to conduct a post-trial inquisition of jurors solely to improve the trial skills of the trial attorney."); Olsson v. A.O. Smith Harvestore Prods., Inc., 696 F. Supp. 411, 412 (S.D. Ind. 1986) ("Post-verdict

3

communications with jurors solely for the purpose of an attorney's self-education cannot be permitted.").

Significantly, defendant's desire to speak with the jurors was brought to the court's attention after the jurors were discharged. Therefore, the court was unable to: 1) ascertain from the jurors whether they would be willing to talk with counsel; and 2) provide any sort of instruction to the jurors regarding their rights surrounding such contact. Furthermore, given the extensive media coverage of this case, coupled with the fact that there are numerous cases yet to be tried, the court does not find that defendant has provided a compelling reason to intrude upon the jury's deliberations in this case. The jury in this case has already been burdened by sitting through a multi-week trial and the court does not want to discourage further jury service by permitting contact when the jury has not said such contact would be welcome. See id. (noting that prohibiting post-trial communications with jurors "avoid[s] the harassment of jurors, thereby encouraging jury service and freedom of discussion in the jury room").

The Clerk is directed to send copies of this Order to all counsel of record.

**IT IS SO ORDERED** this 5th day of February, 2019.

ENTER: *David A. Faber*
David A. Faber
Senior United States District Judge